IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

CODY J. S.,

                          Plaintiff,

              v.                                    Civil Action No.
                                                    5:22-CV-0251 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.

_____

APPEARANCES:                             OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF                           JUSTIN GOLDSTEIN, ESQ.
KENNETH HILLER, PLLC
6000 North Bailey Ave, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                   KRISTINA COHN, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

       Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) are cross-motions for judgment on the pleadings.[1] Oral argument was conducted in connection with those motions on May 3, 2023, during a telephone conference held on the record. At the close of argument, I reserved decision on the motions.   At a supplemental hearing held on May 8, 2023, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)      The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)      The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)      The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:      May 10, 2023
            Syracuse, NY

3

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
CODY JAMES S.,

                        Plaintiff,

vs.                              5:22-CV-251

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------x

          Transcript of a **Decision** held during a

Telephone Conference on May 8, 2023, the HONORABLE

DAVID E. PEEBLES, United States Magistrate Judge,

Presiding.

                 A P P E A R A N C E S

                    (By Telephone)

For Plaintiff:      LAW OFFICES OF KENNETH HILLER, PLLC
                    Attorneys at Law
                    6000 North Bailey Avenue - Suite 1A
                    Amherst, New York  14226
                      BY:  JUSTIN M. GOLDSTEIN, ESQ.


For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of General Counsel
                    6401 Security Boulevard
                    Baltimore, Massachusetts  21235
                      BY:  KRISTINA D. COHN, ESQ.


                *Jodi L. Hibbard, RPR, CSR, CRR*
             *Official United States Court Reporter*
                  *100 South Clinton Street*
                *Syracuse, New York  13261-7367*
                       *(315) 234-8547*

                                                            2

1                    (The Court and counsel present by telephone,

2            2:00 p.m.)

3                    THE CLERK:  We're on the record in the case of Cody

4    James S. versus Commissioner of Social Security, Case Number

5    5:22-CV-251, Counsel, can you please state your appearances

6    for the record starting with plaintiff.

7                    MR. GOLDSTEIN:  Good afternoon, this is Justin

8    Goldstein for plaintiff.

9                    MS. COHN:  Good afternoon, Kristina Cohn for

10   Commissioner of Social Security.

11                   THE COURT:  All right, good afternoon, Counsel.

12   I've had an opportunity now to reflect on this case further,

13   including the arguments that were raised last week during our

14   hearing, and also the supplemental briefing which I

15   appreciate that both of you provided, and I'm prepared to

16   make a ruling.

17                   Plaintiff has commenced this action pursuant to 42

18   United States Code Sections 405(g) and 1383(c)(3) to

19   challenge an adverse determination by the Commissioner of

20   Social Security finding that he was not disabled at the

21   relevant times and therefore ineligible for the benefits for

22   which he applied.

23                   The background is as follows:  Plaintiff was born

24   in October of 1993, he is currently 29 years of age.

25   Significantly, he was 25 years old on the date he made

1    application for benefits in July of 2018.  Plaintiff stands 5

2    foot 5 inches in height and weighs approximately 179 pounds.

3    Plaintiff lives in Cortland in a trailer home with his mother

4    and his mother's boyfriend.  Plaintiff has a 12th grade

5    education.  While in school he was in special education,

6    classified as learning disabled.  It's unclear whether he

7    received an IEP diploma or a regular diploma.  Plaintiff has

8    a driver's license but rarely drives, stating that he is too

9    afraid to drive.

10         In terms of work, plaintiff has very little prior

11   work experience.  He stopped working in June of 2018.  Prior

12   to that time for short periods he was in part-time positions

13   as a restaurant customer service person and a grocery

14   store/retail store stocker.  He also spent one month as a

15   laborer/production in a factory.  That was a full-time

16   position in 2017.

17         Physically, plaintiff suffers from type II

18   diabetes, and a history of nose and stomach issues.

19   Mentally, he experiences borderline intellectual functioning,

20   a learning disorder, and anxiety.  Plaintiff has received

21   treatment from Family Care Medical Group since 2017,

22   primarily from Dr. Lynn Cunningham, who he characterizes as

23   his primary doctor.

24         Plaintiff has several activities of daily living

25   according to him in his function report and in statements

4

1    that he has made to others.  He watches television, plays

2    video games, watches movies, visits with a friend, takes out

3    the trash, he cooks, cleans, does laundry, shops, he can

4    shower and dress.  He noted that his mother helps him with

5    many of these chores.  As I indicated, he does little

6    driving.  He did testify that he can take public

7    transportation.

8              Procedurally, plaintiff applied for Title XVI

9    Supplemental Security Income benefits on July 10, 2018,

10   alleging disability based upon a learning disability, slow

11   comprehension, anxiety, and diabetes.  A hearing was

12   conducted by Administrative Law Judge John P. Ramos on

13   November 19, 2019 to address that application.  ALJ Ramos

14   issued an unfavorable decision on December 17, 2019.  That

15   decision was vacated and the matter remanded by the Social

16   Security Administration Appeals Council on October 21, 2020.

17   ALJ Ramos conducted a second hearing on February 23, 2021,

18   following which he issued another unfavorable decision on

19   March 17, 2021.  The Social Security Appeals Council denied

20   plaintiff's application for review of that determination on

21   January 20, 2022.  This action was thereafter commenced on

22   March 15, 2022, and is timely.

23             In his second decision, Administrative Law Judge

24   Ramos applied the familiar five-step sequential test for

25   determining disability.

1          He found at step one that plaintiff had not engaged
2      in substantial gainful activity since July of 2018.

3          At two, he concluded that plaintiff does suffer
4      from severe impairments that impose more than minimal
5      limitations on his ability to perform basic work functions,
6      including borderline intellectual functioning and a learning
7      disorder.  He rejected diabetes based upon medical showing
8      that the diabetes is controlled through medication and
9      treatment.

10          At step three, ALJ Ramos concluded that plaintiff's
11      conditions do not meet or medically equal any of the listed
12      presumptively disabling conditions set forth in the
13      Commissioner's regulations, including Listing 12.05 and
14      12.11.

15          After surveying the evidence in the record, ALJ
16      Ramos concluded that plaintiff has a residual functional
17      capacity, notwithstanding his impairments, to perform a full
18      range of work at all exertional levels with various
19      additional limitations, many of which, if not most, frankly,
20      relate to his mental capabilities, and I'll discuss that in
21      more detail further on.

22          At step four, ALJ Ramos concluded that plaintiff
23      does not have any past relevant work to compare and went on
24      at step five where he concluded, after considering the
25      testimony of a vocational expert, that plaintiff can perform

6

1    the work of a janitor, packager, and a warehouse worker as

2    three representative positions, and therefore concluded that

3    plaintiff was not disabled at any relevant time.

4            As the parties know, my function is limited, the

5    standard that I apply is extremely deferential.  I must

6    determine whether correct legal principles were applied and

7    whether the resulting determination is supported by

8    substantial evidence, which is defined as such relevant

9    evidence as a reasonable mind would find sufficient to

10   support a conclusion.  The standard has been addressed on

11   many occasions by the Supreme Court and the Second Circuit

12   Court of Appeals.  The latter court addressed it in *Brault v.*

13   *Social Security Administration Commissioner*, 683 F.3d 443,

14   from June of 2012, and characterized the standard as

15   extremely stringent.  The Second Circuit reiterated the

16   standard in *Schillo v. Kijakazi*, 31 F.4th 64 from April 6,

17   2022.

18           In support of his challenge to the determination,

19   plaintiff offers several arguments.  He contends that the

20   residual functional capacity finding, or RFC, is not

21   supported.  As subthemes of that argument, he questions Judge

22   Ramos' elimination of the need for frequent direct

23   supervision from his earlier decision and whether that

24   violates the Social Security Administration Appeals Council's

25   remand order.

1          Secondly, he contends that the administrative law

2     judge failed to evaluate the opinion of Connie Mantey, who is

3     an employment specialist, regarding the need for constant

4     supervision.  He also argues that there improperly is no

5     discussion of a report from a school psychologist Tamara

6     Cass, and fourth, that the administrative law judge failed to

7     properly evaluate the achievement test results reflected in

8     Ms. Cass' opinion.  He also argues that the step five

9     determination is improper, and indefensible because the jobs

10    identified require reasoning and language skills above

11    plaintiff's ability.

12          Third, he argues that step two and step three

13    determinations are not properly explained and subsumed with

14    that is the contention that if the education records of the

15    plaintiff were properly considered, he would meet or equal

16    one of the listed presumptively disabling conditions.

17          The fourth argument is that there was an improper

18    evaluation of Dr. Grassl's opinion.

19          At the hearing, plaintiff raised the additional

20    contention that the statement that, in Administrative Law

21    Judge Ramos' decision that plaintiff has a high school

22    education is erroneous and also clarified that there is a

23    conflict between the Dictionary of Occupational Titles, or

24    DOT, and the vocational expert's testimony, that is, should

25    have been teased out by the administrative law judge

1    concerning the language and reasoning skills required for the

2    three jobs identified.

3         Let me first address the high school diploma issue

4    which I found to be fascinating.  It is true that in his

5    decision at page 21, Administrative Law Judge Ramos stated

6    that plaintiff has at least a high school education.  The

7    matter is addressed in 20 C.F.R. Section 416.964 which sets

8    out four categories of education.  The fourth is high school

9    education and above which is defined to mean, "abilities in

10   reasoning, arithmetic, and language skills acquired through

11   formal schooling at a 12th grade level or above."  It goes on

12   to say, "We generally consider that someone with these

13   educational abilities can do semi-skilled work through

14   skilled work."

15        The achieved -- well, the achievement tests, the

16   Wechsler Individual Achievement Test Third Edition, or WIAT,

17   results were reported by Ms. Cass in her report dated

18   February 27, 2012.  It reflects that plaintiff has a reading

19   comprehension score of 68, which puts him in the 2nd

20   percentile; a word reading score of 61, .5 percentile; oral

21   reading fluency, 61, .5 percentile; spelling, 64, puts him in

22   the 1 percentile.  These would suggest plaintiff is more

23   likely in the limited education category as defined in

24   Section 416.964 of the Regulations which provides as follows:

25   "Limited education means ability in reasoning, arithmetic,

1   and language skills, but not enough to allow a person with

2   these educational qualifications to do most of the more

3   complex job duties needed in semi-skilled or skilled jobs.

4   We generally consider that a 7th grade through the 11th grade

5   of formal education is a limited education."

6          Social Security Ruling SSR 20-01p speaks in terms

7   of evaluating an individual's education quality.  It says

8   that, "education primarily means formal schooling or other

9   training that contributes to an individual's ability to meet

10  vocational requirements, such as reasoning ability,

11  communication skills, and arithmetical ability."  The ruling

12  goes on to say that, "the highest numerical grade level that

13  the individual completed in school may not represent his or

14  her actual educational abilities."  It goes on further to

15  say, "When determining the appropriate education category, we

16  may consider whether an individual received special

17  education.  For example, an extensive history of special

18  education may show that the individual's educational

19  abilities are lower than the actual grade he or she

20  completed."

21          I think in this case the administrative law judge

22  did commit error when stating that plaintiff has at least a

23  high school education.  The error, however, I find is

24  harmless because in the vocational expert hypothetical

25  included at page 61 to 62 of the administrative transcript,

1    the vocational expert was told that the plaintiff is of

2    limited education and as a result, identifies the three jobs

3    at issue, so I don't find any error in that regard.

4         Plaintiff's next arguments focus on the residual

5    functional capacity finding of the plaintiff.  A claimant's

6    RFC, of course, represents the range of tasks he is capable

7    of performing notwithstanding his impairments.  That means a

8    claimant's maximum ability to perform sustained work

9    activities in an ordinary setting on a regular and continuing

10   basis, meaning eight hours a day for five days a week, or an

11   equivalent schedule, and of course an RFC determination has

12   been formed by consideration of all of the relevant medical

13   and other evidence.

14        In this case, the RFC provides as follows, after

15   identifying the -- that the plaintiff can perform all

16   exertional levels, ALJ Ramos went on to find the following:

17   "He retains the ability to understand and follow simple

18   instructions and directions; perform simple tasks with

19   supervision and independently," not sure what that means,

20   "maintain attention/concentration for simple tasks; and

21   regularly attend to a routine and maintain a schedule.  He

22   can relate to and interact with coworkers and supervisors to

23   the extent necessary to carry out simple tasks -- i.e., he

24   can ask for help when needed; accept instructions or

25   criticism from supervisors; handle conflicts with others;

1    state his own point of view; initiate or sustain a

2    conversation; and understand and respond to physical, verbal

3    and emotional/social cues associated with simple work.  He

4    can have brief, occasional interaction with the public.  He

5    can make decisions directly related to the performance of

6    simple work, and he can handle usual workplace changes and

7    interactions associated with simple work.  The claimant

8    should work in a position where he is not responsible for the

9    work of or required to supervise others.  He should work in a

10   position with little change in daily work processes or

11   routine.  Finally, the claimant can perform work that

12   involves one- or two-step rote tasks with no written

13   instructions or written record keeping."

14           The RFC in this case I find is supported by

15   substantial evidence, including the report of Dr. Grassl, who

16   found no limitations -- Dr. Corey Anne Grassl in her report

17   dated October 15, 2018 found no evidence of limitations in

18   certain areas and only moderate limitations in the ability to

19   understand, remember, and apply complex directions and

20   instructions, use reason and judgment to make work-related

21   decisions, and sustain concentration and perform a task at a

22   consistent pace.  The RFC is also supported by the prior

23   state agency administrative determination of Dr. S. Hennessey

24   from November 13, 2018.

25           The issue of elimination of direct supervision

1    requirement in the RFC is a more troublesome one.   The
2    earlier decision provides that the claimant requires frequent
3    direct supervision.   In its remand order, the Appeals Council
4    noted that the residual functional capacity indicates that
5    the claimant requires frequent direct supervision.   It is
6    unclear from the decision what basis exists for such a
7    limitation.   It goes on to direct that on remand, the
8    administrative law judge further evaluate the claimant's
9    mental impairments, give further consideration to the
10   claimant's maximum RFC, and if warranted by the expanded
11   record, obtain supplemental evidence from a vocational expert
12   to clarify the effect of the assessed limitations on
13   claimant's occupational base.   Rather than directly heeding
14   the Appeals Council's position, the administrative law judge
15   simply eliminated the requirement.   I do agree with the
16   Commissioner that ordinarily, after a remand order from the
17   Appeals Council, review is de novo and there is no obligation
18   to include the same limitations in a subsequent decision.
19   This is a little different situation, however.   The first RFC
20   included that limitation, there's no question that it
21   obviously came from an opinion provided by employment
22   specialist Connie Mantey on August 30, 2019.   It's frankly
23   the only thing in the record I could find that deals with the
24   need for a job coach or continuous supervision, that appears
25   at 358 and 359.   Unfortunately, however, the administrative

1    law judge did not discuss or even mention Ms. Mantey's

2    opinion in either of his two decisions.  Under the

3    circumstances, I think the Administrative Law Judge Ramos

4    committed a legal error, and one that requires remand.

5          The next argument addresses the evaluation of

6    opinions.  Based on the filing date of this case, it is

7    subject to the new Commissioner's regulations concerning

8    evaluation of opinions which considers whether they are

9    persuasive, primarily by considering whether the opinions are

10   supported by and consistent with the record in the case.  The

11   ALJ, under the regulations, must address the issues of

12   supportability and consistency but need not address the other

13   relevant factors, although they should be taken into

14   consideration.  The -- of course the weighing of conflicting

15   opinions, if there are any in the record, is reserved to the

16   Commissioner in the first instance.  *Veino v. Barnhart*, 312

17   F.3d 578, Second Circuit 2002.

18         As I indicated, Connie Mantey gave an opinion in

19   this case at 358, 359, from August 27, 2019.  After a trial

20   run at a position with an agency, Ms. Mantey stated the

21   following:  "Cody will need a supervisor on site to give him

22   continuous directions to help him stay focused."  Her title

23   is employment specialist which I liken to a vocational

24   rehabilitation counselor.  The regulations suggest at 20

25   C.F.R. Section 416.902(j) that, while it isn't specific to

1    this position, it suggests that the, Ms. Mantey is a

2    nonmedical source.

3         I note that the prior SSR 06-03p which is now

4    rescinded explicitly listed these types of rehabilitation

5    counselors as nonmedical source and that appears also to be

6    supported by the decision in *Sagman v. Commissioner of Social*

7    *Security*, 2021 WL 5831114 from the Southern District of

8    New York, November 17, 2021.  The opinion of Ms. Mantey, if

9    accepted, would seem to preclude employment since it would

10   require the presence of a job coach.  Ms. Mantey,

11   Ms. Mantey's opinion, as I indicated, is not discussed in

12   either of the decisions by ALJ Ramos.  It is true that 20

13   C.F.R. Section 416.920c(d) states that there is no

14   requirement to discuss the evaluation of a nonmedical

15   opinion, however, as you'll see further on, I think that may

16   be trumped by another consideration having to do with

17   plaintiff's age.

18        There is also an opinion in the record of Tamara

19   Cass from 342 to 348, she is a school psychologist, and

20   although this predates the -- the date of application by six

21   years, nonetheless, it is significant.  It's not discussed by

22   ALJ Ramos.  Ms. Cass is an acceptable medical source.

23   However, there is case law that to suggest that because of

24   its age and the fact that it predated by six years the

25   application in this case, there is no reason to consider and

1    analyze its impact upon the administrative law judge.

2    *Williams v. Colvin*, 98 F.Supp.3d 614 from the Western

3    District of New York, April 10, 2015, and *Krach*, 2014 WL

4    5290368 from the Northern District of New York, October 15th,

5    2014.

6           The medical source statement of Dr. Corey Anne

7    Grassl I indicated finds relatively few limitations, it's at

8    396 to 399 from October 15, 2018.  As the ALJ references, it

9    was based upon a thorough examination.  Granted, she did not

10   have available to her plaintiff's education records but there

11   is no requirement to obtain them.  Dr. Grassl's opinion as a

12   consultative examiner can constitute substantial evidence.  I

13   believe there is no error in not including greater

14   limitations on the ability to interact than opined, and

15   moderate limitation in ability to sustain concentration,

16   perform at a consistent pace is not inconsistent with simple

17   unskilled work.

18          Another thorny issue in this case really is

19   consideration of plaintiff's education records, and

20   specifically the report of Ms. Cass.  As a backdrop, it is

21   clearly plaintiff's burden to establish a limitation in the

22   ability to perform work functions.  The RFC in this case is

23   extremely limiting and specific.  In his decision, ALJ Ramos

24   addressed the intelligence scores, the IQ scores that were

25   reported in Ms. Cass' opinion, that's at page 15 to page 16,

1    and that formed the basis frankly for the ALJ's finding of a

2    borderline intellectual functioning.  Listing 12.05 deals

3    with this, and it is not met or equaled in this case because

4    there's no IQ score of less than 70 and even so, if there

5    was, plaintiff would still have to meet additional B

6    criteria, one extreme limitation or two marked limitations in

7    the domains specified.  Clearly the report is from six years

8    ago, when it comes to IQ, the POMS, and specifically DI

9    24583.055, suggests that IQ scores stabilize after age 16 and

10   are generally considered current at that time.  This report

11   was prepared when plaintiff I believe was 18 years of age, so

12   the -- it still would be an accurate reflection of

13   plaintiff's IQ.

14          Can't say the same, however, with regard to

15   achievement.  Achievement can fluctuate and vary over a

16   period of six years.  The achievement scores in my view

17   cannot be substituted for IQ scores to determine if plaintiff

18   meets or equals a listing, and specifically Listing 12.05.

19   There's clearly scores related to low reading ability and

20   spelling ability but it doesn't necessarily translate to an

21   inability to remember and apply information.  Plaintiff's

22   case -- and arguing otherwise is distinguishable.  Plaintiff

23   relies on *F.S. v. Astrue*, 2012 WL 514944 from the Northern

24   District of New York, February 15, 2012, that's a childhood

25   disability case and in a childhood disability, it would be

1    appropriate to analyze whether there's functional

2    equivalence.  This is not a childhood disability case,

3    however.  And even if it could be considered that the

4    achievement test scores, the regulations show that it is not

5    necessarily dispositive, but instead those scores would have

6    to be interpreted in light of all evidence of plaintiff's

7    actual level of functioning.

8            However, the matter is complicated by consideration

9    of SSR 11-2p.  Under that, plaintiff is defined as a young

10   adult, and it requires consideration of evidence, including

11   from medical and nonmedical sources.  The ruling specifically

12   provides that evidence from other sources who are not medical

13   sources but who know and have contact with the young adult

14   can also help us evaluate the severity and impact of a young

15   adult's impairments.  Those sources include family members,

16   educational personnel, for example, teachers and counselors,

17   public and private social welfare agency personnel, and

18   others.  I believe under SSR 11-2p, the opinion of Ms. Cass

19   and also Ms. Mantey should have been considered and it was

20   error not to consider them.  I think that trumps the argument

21   that because of its age and it was outside the relevant

22   period, Ms. Cass' opinion, for example, need not be

23   addressed.  I think the better practice would have been to

24   address them both.

25            The last issue is the DOT conflict.  The vocational

1    expert only identified, when asked about a conflict with the

2    DOT, the off-task, absenteeism, and contact with people and

3    not depending on other persons, not address -- as not being

4    addressed by the DOT, that's at page 64.  Clearly, if there

5    is a conflict, then SSR 00-04p requires the administrative

6    law judge to examine the conflict.  That is supported by

7    *Lockwood v. Commissioner of Social Security Administration*,

8    914 F.3d 87 from the Second Circuit, 2019.  The Second

9    Circuit in that decision noted the ruling mandates that

10    whenever the -- a vocational ruling -- I'm sorry, the ruling

11    mandates that whenever the Commissioner intends to rely on a

12    vocational expert's testimony, he must identify and inquire

13    into all those areas where the expert's testimony seems to

14    conflict with the Dictionary.  In other words, the ruling

15    requires the Commissioner to obtain a reasonable explanation

16    for any apparent, even if nonobvious, conflict, between the

17    Dictionary and a vocational expert's testimony.  It goes on

18    to say the importance of teasing out such details is

19    precisely why the Commissioner bears an affirmative

20    responsibility to ask about any possible conflict between the

21    vocational expert's evidence and the information provided in

22    the Dictionary, citing SSR 00-4p.  Absent such an inquiry,

23    the Commissioner lacks substantial basis for concluding that

24    no such conflict in fact exists.  And of course this must be

25    considered against the backdrop that at step five, it is the

1    Commissioner who bears the burden of proof.

2              There are three positions identified.  One is

3    cleaner, industrial.  For a language level, DOT 381.687-018

4    requires the following:  Reading, passive vocabulary of 5,000

5    to 6,000 words, read at rate of 190 to 215 words per minute,

6    read adventure stories and comic books, looking up unfamiliar

7    words in dictionary for meaning, spelling, and pronunciation,

8    read instructions for assembling model cars and airplanes.

9              The second position identified as packager/hand is

10   the subject of Dictionary of Occupational Titles 920.587-018,

11   it provides for a reasoning level of 2, apply common sense

12   understanding to carry out detailed but uninvolved written or

13   oral instructions, deal with problems involving a few

14   concrete variables in or from standardized situations, and

15   for reading, language level, reading, recognize meaning of

16   2500 two- or three-syllable words, reading rate of 95 to 120

17   words per minute, compare similarities and differences

18   between words and between series of numbers.

19             The third is laborer, stores, it is subject of DOT

20   922.687-058 and for language, it requires reading, recognize

21   between -- meaning of 2500 two- or three-syllable words, read

22   at a rate of 95 to 120 words per minute, compare similarities

23   and differences between words and between series of numbers.

24   For writing, it requires, print sample sentences containing

25   subject, verb, and object and series of numbers, names, and

1    addresses.

2         In my view, since this is not addressed and it's

3    unclear whether plaintiff can meet these requirements, the

4    administrative law judge was required to further examine the

5    vocational expert and the failure to do that, again,

6    constituted legal error.

7         So for all the reasons indicated, I believe there

8    are multiple errors in this case and that judgment on the

9    pleadings should be granted to the plaintiff.  I do not find

10   persuasive evidence of disability but I think this frankly

11   should be looked at by a fresh set of eyes and I understand

12   the Commissioner's regulations to require that after an

13   administrative law judge has seen a matter twice, it will be

14   reassigned to another administrative law judge which I think

15   is a good idea in this case.  So I will grant judgment on the

16   pleadings to the plaintiff and vacate the Commissioner's

17   determination, remand the matter for further proceedings.

18   Thank you both for excellent presentations last week.  Have a

19   great day.

20        MR. GOLDSTEIN:  You too, thank you.

21        MS. COHN:  Thank you.

22             (Proceedings Adjourned, 2:38 p.m.)

23

24

25

1                  CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                     Dated this 9th day of May, 2023.

17

18

19                     /S/ JODI L. HIBBARD
                       _____

20                     JODI L. HIBBARD, RPR, CRR, CSR
                       Official U.S. Court Reporter
21

22

23

24

25

JODI L. HIBBARD, RPR, CRR, CSR
(315) 234-8547